HELEN BURNETT, executrix, &c.

*v.*

JAMES A. EATON and others.

1. A testatrix, after sundry bequests, including a legacy of $1,000, made this bequest: " In the event that the said Bowery property shall not be reconveyed to me, or be recovered by virtue of the judgment in the suit so to be prosecuted by me, the whole of my real estate and lands remaining over and above the payments and expenses first aforesaid, and the legacies given in the will, or the proceeds thereof, shall be divided into two equal parts, and my executrix may, and is authorized to, sell and convert the same into money, and to give the proper conveyance thereof. Of one equal half part of the proceeds I give and bequeath to my said daughter Helen Burnett and her heirs, and the other half part thereof, less the sum of $10,000 made an express charge thereon in favor of my said daughter Helen Burnett, to be retained by or paid over to her to her own absolute use, I give and bequeath to the said James A. Eaton and Lewis Eaton and Silas P. Cook, if the said Dr. Cook make as aforesaid the payment of the one-third of the $10,000 and interest to the said James and Lewis severally ; or, if the said payment shall not thus be made, the said portion, less the said sum of $10,000 so made a charge thereon, shall go to the said James and Lewis and their heirs, the interest and income to be

Burnett *v.* Eaton.

paid over to them severally, and the said Silas P. Cook be excluded from participation therein."—*Held,*

(1) That S. P. C., having paid the amount decreed by this court to be due to L. E., and also having paid a part of the legacy to J. A. E., and secured the remainder to J. A. E.'s satisfaction, has complied with the condition imposed upon his gift.

(2) The gift to S. P. C., L. E. and J. A. E. is absolute and in equal shares in severalty.

(3) The $1,000 legacy is, in the event of a deficiency of personalty to satisfy it, a charge on the whole estate.

2. Where lands consist of several parcels, with a house on each one, the presumption is that selling the houses separately would be most advantageous for the estate.

3. At an executrix's sale she furnished the percentage to be paid, and an agreement for reconveyance was made simultaneously with her deed, and the premises were afterwards conveyed to her.—*Held,* that a resale must be ordered, with a proviso that if the premises bring less than was formerly bid, the sale to the executrix will be confirmed.

On final hearing on bill and cross-bill and answers, replications and proofs.

*Mr. C. H. Voorhis,* and *Mr. O. L. Stewart* of New York, for complainants.

*Mr. M. W. Niven,* for Lewis Eaton.

THE CHANCELLOR.

The complainant, executrix of the last will and testament of Mary Ann Hall, deceased, files her bill for a construction of the will, and for direction in the administration of the estate thereunder. The will, after directing payment of the debts and funeral and testamentary expenses, and providing for the payment of the cost of a burial lot, &c., which the testatrix directs her executrix to purchase, and giving a legacy of $1,000 to Mary H. Lewis and a specific bequest to the executrix, disposes of all the real property of the testatrix on a contingency therein mentioned, which is the recovery, by her or her estate, of certain property which

she designates as the Bowery property, in the city of New York, and for the recovery whereof she contemplated bringing a suit.    The fifth section of the will is as follows:

"In the event that the said Bowery property shall not be reconveyed to me, or be recovered by virtue of the judgment in the suit so to be prosecuted by me, the whole of my real estate and lands remaining over and above the payments and expenses first aforesaid, and the legacies given in the will, or the proceeds thereof, shall be divided into two equal parts, and my executrix may, and is authorized to, sell and convert the same into money, and to give the proper conveyance thereof.    Of one equal half part of the proceeds I give and bequeath to my said daughter Helen Burnett and her heirs, and the other half part thereof, less the sum of $10,000 made an express charge thereon in favor of my said daughter Helen Burnett, to be retained by or paid over to her to her own absolute use, I give and bequeath to the said James A. Eaton and Lewis Eaton and Silas P. Cook, if the said Dr. Cook make as aforesaid the payment of the one-third of the $10,000 and interest to the said James and Lewis severally; or, if the said payment shall not thus be made, the said portion, less the said sum of $10,000, so made a charge thereon, shall go to the said James and Lewis and their heirs, the interest and income to be paid over to them severally, and the said Silas P. Cook be excluded from participation therein."

The condition as to the payment by Dr. Cook of the third of the sum of $10,000, with interest, to James A. and Lewis Eaton has reference to a condition contained in the fourth section of the will (that in which the testatrix disposes of her land on contingency as before mentioned), to the effect that Silas P. Cook is to share with his half-brothers, James A. and Lewis Eaton in a certain provision therein made for the benefit of all three of them, if the condition be performed; but if it be not performed, then of James A. and Lewis alone.    That condition is that Dr. Cook shall, to the "knowledge and satisfaction" of the executrix of the testatrix, pay to James A. and Lewis each one-third of the sum of $10,000, with interest from the death of their mother, which occurred in 1861, to the time of making the payments.

The bill states that the Bowery property was not recovered. The suit referred to in the will in that connection was brought by the testatrix, and resulted adversely to her. It further alleges that the whole of the real estate of which the testatrix died seized, has been sold by the executrix, under the power of sale vested in her by the will (she had such power under the will), for the sum of $51,200; that Dr. Cook has paid to James A. and Lewis Eaton, to the knowledge and satisfaction of the complainant, their respective shares of the $10,000, with interest, mentioned in the fourth section of the will, and that the complainant is in great doubt and uncertainty as to the nature and effect of the gift to James A. and Lewis Eaton and Silas P. Cook, in the fifth section of the will, and that she is at a loss to determine whether the gift is to them absolutely and in severalty, or for life and jointly, and she prays the direction of this court in respect thereto. It further states that a sufficient amount has not been realized out of the personal estate of the testatrix to pay her funeral charges, the expenses of administering her estate, and all her debts and the legacy of $10,000 given to Mary H. Lewis, though a portion of the personal estate remains still uncollected; and that it has been claimed that those charges, expenses and debts and that legacy must be paid out of the personal estate, if a sufficient amount thereof for that purpose was available when that legacy became due, and that if there was not then enough personal estate available for that purpose, it was the duty of the executrix to take those charges, expenses and debts, and that legacy, or the deficiency, out of the half of the proceeds of the sale of the real estate given by the will to James A. and Lewis Eaton and Silas P. Cook and their heirs; and the executrix prays the direction of the court on that head.

The bill further states that it is claimed that the legacy of $10,000 to Mary H. Lewis must, in any event, by virtue of the force and effect of the fifth section of the will, be taken wholly out of the half of the proceeds of the sale of the

real estate given by the will to James A. and Lewis Eaton and Silas P. Cook and their heirs; and the executrix seeks direction on that point.

The bill further alleges that Silas P. Cook received from the testatrix an advance of $5,400, and that he agreed with her that it should be deducted, with interest, from any moneys which should be coming to him from her estate; and it prays that the executrix may be directed to deduct that sum, with interest, accordingly.

The bill also prays direction as to the gift which was made to certain persons named in the contingent provision of the fourth section of the will, and which was given only on that contingency, which, as before stated, has not happened.

Answers were filed to the bill by Lewis Eaton and Silas P. Cook. The former denies that he has received from Dr. Cook his full share, and interest thereon, of the $10,000 mentioned in the fourth and fifth sections of the will, but insists that there is still due to him the sum of $500, with interest from March 10th, 1862, and that, therefore, Silas P. Cook is not entitled to any interest under the fifth section of the will. He alleges that the executrix did not fairly sell the real estate, but that she sold it fraudulently, and was herself the purchaser at the sale, and bought it at a price far below its true value. He insists that he takes the gift to him in the fifth section of the will absolutely and in severalty, and not for life merely nor jointly. He alleges, on information and belief, that there is sufficient personal estate to pay the debts, funeral and testamentary charges, and the Lewis legacy, and that the executrix has concealed and not included in her inventory, or accounted for, a part of the personal estate, and he insists that the Lewis legacy, if a charge at all on the real estate, is chargeable on all of it, and not on the share of him and his two brothers only.

Silas P. Cook, by his answer, while he admits that he received the advancement stated in the bill, alleges that he was to allow it on his share of the estate of the testatrix

only in case he should receive such full share of it as he would have been entitled to if she had died intestate. He alleges that James A. Eaton and Lewis Eaton have received from him, as his father's administrator, their full share of the $10,000 and interest, to be paid to them by his father, and he insists that he is entitled to an interest under the fifth section of the will accordingly, and that he takes such interest absolutely and in severalty, and not for life only nor jointly with them. He also insists that the personal estate is sufficient to pay the debts, funeral and testamentary charges, and the Lewis legacy; and that, if not, the legacy is to be charged on all of the real estate, and that the executrix has been guilty of negligence in the collection of the personal estate, and ought to be charged with the consequences of her neglect.

The defendant, Lewis Eaton, filed a cross-bill in which he alleges that the inventory filed by the executrix does not contain a full and complete account of the personal estate which has come to her hands, and that, in particular, she has omitted to charge herself with $8,112.68 which was received by her as the agent of the testatrix, in the life-time of the latter, on account of judgments recovered by the latter against the husband of the executrix, and that the executrix was, in the life-time of the testatrix, the manager of the business of the latter, and as such received not only the amount of the judgments, but also large sums for rents of the real estate of the testatrix for which she has not accounted, but for which she should account. It alleges that Dr. Cook has not paid the whole of Lewis Eaton's share of the $10,000 and interest, and that Silas P. Cook, therefore, is not entitled to any interest under the fifth section of the will, but that James A. and Lewis Eaton are entitled to half of the real estate of the testatrix, subject to the charge of $10,000 in favor of the executrix. It makes the same allegations as are made in Lewis Eaton's answer in regard to the sale of the real estate by the executrix; alleges that it was bought in for her by Jacob C. Winans, pursuant to an agree-

ment between him and her, and was conveyed by him to her. It charges that her admission, contained in her bill, that Dr. Cook has paid to James A. and Lewis Eaton their shares of the $10,000 and interest, is a fraud upon them. It prays an answer on oath; that the executrix may account in this court for all of the estate received by her, including the moneys received on the judgments against her husband, and for rents, in the life-time of the testatrix, and that she and Winans may account for the fair value of the real property sold by her; that Silas P. Cook may be barred from all participation in the provision made in the fifth section of the will for James A. and Lewis Eaton and him, and that the executrix may account to the Eatons alone for the half of the real estate at its fair value, and the rents thereof, less the charge in her favor of $10,000.

The executrix and Silas P. Cook have each answered the cross-bill, denying all the equity against them respectively. Winans also answered that bill, denying the allegations thereof against him.

The questions which were discussed and submitted for adjudication on the hearing were, as to whether Silas P. Cook is entitled to an interest under the fifth section of the will; what is the nature of the interest given to the Eatons and to him (if he is entitled to any) thereunder; whether the Lewis legacy is to be charged on the whole of the real estate, or only on the share given to the Eatons and Cook; and whether the sale of the real estate by the executrix was or was not fraudulent.

The allegations of the answer of Lewis Eaton, and of the cross-bill, that the Eatons have not received their full shares of the money which was to be paid to them by Dr. Cook, is met by the answer of Silas P. Cook. It alleges that Dr. Cook died on or about the 10th of January, 1874, intestate, that letters of administration of his estate were issued to Silas P. Cook; that, on the 10th of September, 1874, the latter paid the complainant Lewis Eaton, on account of his share of the $10,000 and interest, the sum of $5,176; that

this amount was in full payment of a decree of this court in favor of the latter for his share of the money, which, by the decree, was held to be $8,500 and interest, instead of $10,000 and interest; and that on or about the 28th of July, 1875, he paid to James A. Eaton $1,500 on account of his share, and made an agreement with him for forbearance for a reasonable time for the balance, it being agreed that the administrator should pay interest thereon.

The executrix states in her bill that the payments have been made, to her knowledge and satisfaction. James A. Eaton raises no question as to the payments. The answer of Silas P. Cook to the cross-bill states that the entire amount due to Lewis Eaton was paid in full and receipted for by the latter on the 10th of September, 1874. The testatrix died in January, 1875. The executrix testifies that she was present at the payment. It appears that the bond which was given to secure the payment of the sum, which is stated in the bill to be $10,000, was for $8,500 only, and, in a suit brought in this court in the life-time of the testatrix, by Lewis Eaton against Dr. Cook, for his share of the money, the amount was decreed, in May Term, 1874, to be the latter sum. *Eaton* v. *Cook,* 10 *C. E. Gr.* 55.

James A. Eaton, as before stated, makes no complaint. The object of the condition which required the payment of this money by Dr. Cook, was a distribution of the testatrix's estate satisfactory to her, and to that end she deemed it proper to require the payment by Dr. Cook to each of his step-sons (the Eatons) of one-third of the amount which had been placed in his hands by her, for the benefit of his wife and children, in 1856. His wife was dead when the will was made. James A. Eaton might, if he had seen fit to do so, have voluntarily and without consideration released Dr. Cook's estate from the payment, and that would have satisfied the condition so far as he was concerned. He, of course, had a right to make terms with Dr. Cook's administrator as to the payment. The payment is not required by the will to be made in any specified time. The Eatons

31

would, of course, be protected in their right to it; but if it has been fully made so far as Lewis Eaton is concerned, and, as to James A. Eaton, partly made, and the payment of the balance by his agreement postponed to a future day, there is no ground, in the absence of any complaint on the part of the latter, to hold that the interest of Silas P. Cook has been forfeited through non-performance of the condition.

Next, as to the interest which the Eatons and Cook take under the fifth section of the will. The gift is to the three, if the payment by Dr. Cook be made; but, if not, then the subject of the gift is to go to the Eatons and their heirs, and the testatrix adds that the income is to be paid over to them severally, and Silas P. Cook is to be excluded from participating therein. The gift is, as before stated, in case the payment be made, to the three, and nothing is said as to the income in that connection. There having been no forfeiture, the gift stands in favor of the three, and is to them absolutely and in equal shares in severalty. If there had been a forfeiture of the interest of Silas P. Cook, the Eatons would, notwithstanding the provision as to the payment of the income to them, have taken absolutely and not for life merely, and they would have taken in severalty. There is no trust declared, nor any limitation over.

A devise of the rents and profits of land is equivalent to a devise of the land itself. *Den* v. *Manners, Spen.* 142; *Demarest* v. *Love,* 2 *Vr.* 220.

A bequest of the produce of a fund without limit as to time, is equivalent to a bequest of the fund itself. *Manning* v. *Craig,* 3 *Gr. Ch.* 436.

The gift of the interest and income in this case is expressly in severalty. The Lewis legacy is, if there be deficiency of personal estate to pay it, chargeable on the whole of the real estate. The fifth section of the will is explicit, both as to the charge and the extent of it.

The cross-bill seeks relief against the executrix, on the ground of a fraudulent disposition by her of the real estate

Burnett v. Eaton.

in the city of New York. It consisted of three parcels: a lot in Grand street, on which there were two houses; land in Clinton street, on which there were three houses, and land in Attorney street, on which there were either two or three houses. The evidence is not clear as to the number of houses on this last property. After, as is alleged, due advertisement, these parcels of real estate were set up for sale by the executrix. They were sold in a public place in the city of New York. There was competition in the bidding, and they were all struck off to the defendant, Joseph C. Winans, for $51,200. Winans says he thinks the property brought a fair price, but says he is not particularly acquainted with the value of property in New York. He adds that he got the valuation from the agent of the executrix. The counsel of the executrix also testifies that, in his judgment, the property brought its full value. Though the executrix swears that Winans was the purchaser of the property, and that, though he reconveyed the property to her, it was not in pursuance of any arrangement between them, and that there was no agreement between them that he should reconvey it to her, it must be presumed that, in speaking as to an agreement, she means to be understood as referring to the time of the sale or previously thereto, for she straightway admits that there was an agreement between her and Winans for the reconveyance of the property by him to her.

It appears that the sale took place on the 17th of December, 1875, and the deeds to Winans were delivered on the 8th of January following. They were dated on the 7th of January. They were not acknowledged until the next day. The agreements to reconvey (there were three of them, one for each property,) were made on the day of their date, the 8th of January, 1875. Winans says that they were executed on the day when the deeds were made to him by the executrix. The delivery of the deeds to him, and the delivery of the contracts to reconvey to her, were contemporaneous transactions. In pursuance of the agreements, he

reconveyed the property to her, individually, in November, 1876, and she still holds it. He never had the deeds from her to him in his possession. When they were delivered he handed them to her counsel, who caused them to be recorded, and Winans never received them afterwards. He says he never expected that they would be delivered to him. Though he paid ten per cent. of the purchase-money on the day of the sale by the executrix, he testifies that he received it from her, part from her in person and the rest from her agent. He says that he did not know where the ten per cent. ($5,100) was coming from until he received it; that he did not know, upon the day of sale, that it would be furnished; that he did not know anything about it. He says, further, that he got it at her lawyer's office, on the day of sale, before the sale took place. He, in fact, never paid anything for the property, and he testifies that he never received anything whatever for it when he reconveyed it. He says he did not buy the property as an investment, but "to close up the estate, the heirs could not agree." He says he told the executrix, after the day of the sale, that she "had better have a writing drawn to convey the property back to her in one year, so that she could get the estate settled up." He says he had talked to her about the matter prior to that time, as he had talked about other matters; that he does not remember the date of the first conversation, but thinks it was before the sale, and that he had no conversation with her before the sale with reference to any agreement; that he talked a great many times about the property with her and Lewis and James A. Eaton; that that was when the dispute was as to the value of the property, and that some said it was worth $80,000, some more and some less. He says, indeed, that there was no agreement or understanding between the executrix and himself prior to the sale, and that no one suggested to him that he should buy the property; but he says, also, that she spoke to him about one or two friends she had in New York, whom, she said, she thought she might get to buy the property;

Burnett *v.* Eaton.

that this was two, three or four months before the sale, and that she said she thought she might get some friends to come forward and settle the matter. He says the trouble was in reference to the valuation of the property. Though he says he did not purchase the property at her suggestion, he qualifies the statement. He says he did not purchase it at her suggestion *directly.* It is most manifest, from all the proof on the subject in the cause, that he bought the property for her in pursuance of an understanding between them. It appears, from the testimony of her counsel, that she consulted him as to whether she could buy in the property herself. Winans says that he was her adviser and friend; that she had a great deal of legal business to attend to; that she had some trouble with her business, and that one of her difficulties was the settlement of this property in New York. Nor does it appear that the sale itself was a fair one. The property was put up and sold in three parcels. On the Grand street property there were two houses, on the Clinton street property two, and on the Attorney street property two or three. Winans says that each property was sold by itself; that it was sold in three parcels, and that the Attorney street property was sold at so much a house for the three. It does not appear that this method of selling the property in gross was the most advantageous for the estate, and, in the absence of proof to the contrary, it would be presumed to be the reverse.

The executrix substantially purchased the property at her own sale. The sale, therefore, cannot be upheld. It makes no difference that the property was put up at auction on due advertisement, and that the agent of the executrix (for such Winans was, in fact,) bid a higher price for it than any one else would bid. *Davone* v. *Fanning,* 2 *Johns. Ch.* 252; *Perry on Trusts,* § 205.

The property must be again exposed to sale, such sale to be under the direction of a master of this court, and if at such sale the property shall bring no more than the sum given for it by the executrix, the sale to Winans and the

conveyance by him to her will be confirmed; but if it shall bring more, that sale and conveyance will be set aside, and the executrix will be ordered to convey the property to the purchaser for the price at which it may be struck off.